Mr. Napolitano, when you are prepared, please proceed. Thank you, Mr. Mayor. Good morning, Chief Judge Smith, your honors, and may it please the court. Quote, it is our belief that our oath of office requires us to take this action. That, end quote, that is a direct quote lifted from the allegedly protected speech that Mr. Skidmore and Mr. Noon claimed they were retaliated against for making. But, this court's precedent, specifically in Bond v. City of Omaha, decided in 2010, stated that when the party seeking or alleging protected speech admits that that speech was made pursuant to their duties, there is no First Amendment protection. And that's because after- Counselor, you're equating oath with duties. Isn't that kind of a loose connection? I don't think so, and I think for two reasons, your honor. First, if you look at the definition of oath, it's a promise. An oath is a promise to fulfill your duties faithfully. So, if you say that I have to do this because my oath requires it, you're saying I made a promise to do this because my duties require it. They may not be the same definition, but an oath encompasses your duties. So, if they swore an oath to uphold the laws of Constitution, wouldn't that be all-encompassing? I appreciate- Everything's their duty. Well, that goes to Apolli's argument, this public policy argument, that if you give us the relief we grant, you basically deprive every public employee of their First Amendment rights, which is simply untrue. First, that issue isn't before this court, and we're not relying on the oath. We're relying on their admission and their belief that they thought they had to because of their oath. So, we're not saying that every oath is necessarily going to make every piece of speech unprotected by the First Amendment. But this court, and Garcetti before it, has recognized that when you are a public employee, you do give up some of your First Amendment protections. And that is when you are speaking pursuant to your duties. And in this case, we have an admission that they thought they had to speak. It's contained twice in the speech itself, the complaint packet, at the beginning and at the end. But is it a subjective test or is it an objective test? As to whether or not they spoke as private citizens. Exactly. In other words, you're saying there's this admission that they believed it was, but what if they're wrong? In other words, you're relying on their own subjective belief versus whether or not it may be objectively true. Well, honestly, I think the answer to that question is it can be both depending upon what the speaker believes. That's subjective. If we're talking about what the speaker believes, it's subjective.  So if, for example, Newton Skidmore said, as they have testified now that I presented their admission to them, that, oh, no, it went beyond that, it's not limited to that. Let me put it in a hypothetical sense. Sure. Let's say the sole thing that they complained about was the chief was having an affair, totally unrelated to his, not somebody who worked for him or anything like that, totally unrelated to the operation of the police department. And that was it. And they said, well, I think that was part of my oath, so I had to blow the whistle about this under my oath. Would that count just because he subjectively believed them? I mean, I think under Bonn it would. Bonn says, I mean, in Bonn you had a person who was hired to prepare these reports, and she prepared a report and did several media interviews to it. They propounded an interrogatory asking her if she did this pursuant to her duties, and she admitted that she had. And the court said that admission is fatal to her claim. And so if the court disagrees with that, now I still think we come back to this clearly established prong. This is a qualified immunity appeal. And you can determine which element or prong to address first, whether there is a constitutional violation, and if so, whether it was clearly established at the time. And this court, I think in Mogard put it quite nicely, is that a law is not clearly established unless it places every reasonable official on notice that what they're doing is illegal. And if you're sitting in my client's position in 2020, and you have this complaint packet, which twice admits that it's made pursuant to their oaths, and you look at Bond that says an admission defeats the claim, there is simply no way under those facts that the law could be clearly established by placing every reasonable official on notice that it can't do exactly what Bond tells it. Of course, that admission wasn't in place, was it, at the time of the so-called retaliation? I'm not sure I'm following. So the complaint packet, the physical document, was submitted on September 12, 2019, and the officers were laid off the following March. Yeah, I guess they did in at least one of them, they did say they were doing this pursuant to their oath, right? So it is kind of confusing, Your Honor. There's three documents, what we're calling the complaint packet. There's the original complaint, which is Exhibit 6 of the summary judgment record. It's volume 3, contained on volume 3, page 531. Counsel, could you get that mic just a little closer to you? Terribly sorry. Volume 3, page 531, is the original complaint. That contains those admissions that I'm referring to, and accompanied with that was a supplemental complaint that Mr. Skidmore didn't participate in, but Mr. Noon did. I had forgotten. I thought they came later. Okay. I'm sorry. Does that answer your question? Yeah. All right. So under the clearly established prong, there's simply no way with a precedent in Bond that a reasonable official would know that when there's an admission, that they're required to essentially ignore that admission and do this objective test. So for that reason, we think we are entitled to qualified immunity, both of my clients, in reversal of the district court's denial. But even if, and the court doesn't need to get to Pickering, if it finds in favor of us on that private citizen prong, but even if a portion of their speech was made as private citizens, this court still has to engage in the Pickering balancing exercise. Can I go back to your last point before you go into Pickering? Yes, Your Honor. My recollection, though, was that the supplemental complaint didn't include the oath language. Does that matter at all to your clearly established argument? I don't think it does. I don't think it does for two reasons. The first is, I mean, if you read Lyons 2 and Mogard, this court has said, you know, even if at any point in time the speech was transformed from public employee speech to private individual speech, a reasonable official under certain circumstances could believe he was still speaking as an aggrieved officer. And given that the complaint packet was submitted as a packet, and together and that initial document said they were doing this out of duty, out of their fulfillment of their oath, I think that that would fall under that Lyons and Mogard determination that a reasonable official could believe it was a continuation of the speech. Secondarily, Skidmore did not participate in that supplemental complaint. It was only Mr. Noon. And during Mr. Noon's deposition, I showed him the oath language, and I asked him if he agreed with it. He said yes. I asked him if that were also true with the supplemental complaint. He said yes. So we have an after-the-fact admission that it, that same admission in the original complaint applied to the supplemental complaint. Does that answer your question, Your Honor? Yes. Okay. So back to Pickering. Even if the court found that there was some speech that was spoken as a private citizen, we have to apply the Pickering balancing test. And the district court did make a factual finding that my clients had demonstrated adequate showing of disruption to trigger the Pickering balancing test. Mr. Skidmore and Mr. Noon suggest the court need not do that because we haven't demonstrated sufficient evidence. My response to that would be this court has routinely, recently in an en banc decision in Morgan, that actual disruption is not required. The parties, the governmental employer, is not required to wait for disruption to occur. If there is a reasonable potential for disruption, it can act. But in this case, there was actual disruption. The district court made the factual finding. And it is supported by the record, which means that this court need not even address that particular issue. We only need to apply the Pickering balancing test. And importantly, this court has routinely held that when we trigger the Pickering balancing test, the right at issue will rarely be clearly established. I believe that's both in Morgan and in Nord. And that is true in this case. And of the six interrelated Pickering factors, Skidmore and Noon concede the first two. The need for close working relationships in the workplace, harmony in the workplace. Now, while he conceded those two, or they conceded those two factors, it needs to be pointed out that those factors are not throwaway factors. Those are incredibly important factors, especially when you're talking about a public safety organization such as a police department. And this court has routinely given, I think it's in the Anzadula case, stated that you give significant deference to law enforcement agencies because of what they're putting on the line. The fact that they could be encountered with life and death situations and you've got to be able to trust the guy or gal next to you and that they're not going to try to undermine you. So those two factors weigh heavily in my client's favor. The third factor is the time, place and manner of the speech. And in this case, this wasn't speech made during a public debate or in an election campaign or in a protest or even publicly disclosed. It was an anonymous complaint submitted internally to the mayor and the board of aldermen in which it asked that it be held in confidence because it stated it's in the best interest of the city that it be handled with the minimal amount of disruption. So not only was it not public speech that was meant to be consumed by the public, it in itself acknowledged the potential for disruption should it be... So are you saying they would be entitled to more protection if they were more disruptive? No, Your Honor. I'm saying that when you're talking about the importance, the public importance piece and whether or not they intended it to be disseminated to the public so that they could be informed and make decisions based upon it, that this cuts against that argument because they didn't mean for it to be disseminated. In fact, Mr. Noon testified that he didn't give it to the attorney general, he didn't give it to the media, he didn't give it to anybody else except the mayor and the board of aldermen. And, Your Honor, I was going to reserve four minutes, but if you have any questions about this particular issue, I would address them now. Otherwise, I'll reserve my time. I see no questions. Thank you, Mr. McConnell.  May it please the Court. My mouth's a little dry. I'm sorry. I forgot my water bottle. So bear with me. Let's start with the oath versus duty question. Well, I guess let me actually start with the jurisdictional question since that's where we should start. The Walton case from this circuit makes it clear that when there's a factual dispute, when the court, the district court has found there's a factual dispute that is underlying the legal determinations the court needs to make in a qualified immunity case, or whether it's one of the factual questions in a qualified immunity case, this court doesn't have jurisdiction because it's not a collateral order. So, in this case, a lot of the discussion in the briefing and the discussion that opposing counsel just had with you all details core disputes of fact. And a dispute of fact is, and the core dispute of fact in this case is, did the speech at issue here, and it's multifaceted, there's a lot of different statements that are made here, was that speech made by Officers Noon and Skidmore pursuant to their duties? That's a factual question. And here, the defendants are questioning, the district court's finding that there's a genuine dispute of fact on that question. And I'll point to, take the court to Garcetti and then the later Supreme Court case, Lane v. Franks, to explain why, and they'll help highlight the factual nature of the situation. Counsel, what's the effect of a sworn oath declaring that the statements were made in pursuance of fulfilling an oath to do their duty? Judge, that does not settle the question. It does not make it an undisputed fact. And here's why. In Garcetti, the court talks about formal job descriptions and their effect on this analysis. And it says, formal job descriptions often, and I'm obviously equating that to an oath in this situation. Even though we don't know what the oath was, it's not in the record anywhere. So that's another reason why it's a factual question. What is the swearing to? We can kind of think about what it might be, but we don't know. So that makes it a factual question. So it's too early to make that determination. But back to Garcetti. Formal job descriptions often bear little resemblance to the duties that an employee actually is expected to perform. And the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes. I want to point the court to another case. It's not in the briefing, I don't think. And it's Anderson v. Valdez. It's a Fifth Circuit case from 2019, and it is about oaths. I read it this morning. And I can follow up with a letter with this precise site. But the plaintiff in that case failed because it wasn't clearly established at that point. It's the 2019 case. And the plaintiff was an officer of the court working for a judge and reported the judge. I'm sorry, Judge, you have a question? Yeah, let me. The question of whether it was clearly established seems to me to be a legal question, because that's the question of, you know, is there sufficient case law that would cover a situation like this? And as I understand the argument, is that with the oath statements here, there is no case law that clearly establishes that this would be within the scope of their job duties, or outside, I should say, outside the scope of their job duties, and therefore protected First Amendment speech. I think that's at least the sort of clearly legal question that I think is at a minimum before us. I appreciate the point, Judge. First off, do you agree that it's a legal question? And then secondly, what's your response to that argument? At top level, it is a legal question. But underlying it, there are still disputes of fact that the court needs to answer to make that decision. What is the nature of the speech here, and how can it be categorized as part of its job obligations? Not if we assume the facts in the light most favorable to you, that indeed some of them are protected or would be protected. The question is, in light of the oath requirement, or the oath statements, would it be clearly established that it was in fact protected such that the chief should have known he can't fire these people? Yes, it is clearly established. A bond is distinguishable. What cases clearly establish with an oath-type statement that seems to, at least on the face of it, bring it under their duties, so to speak? My answer to this is Garcetti itself, and the language in that case. That was 2006. Lane v. Franks, 2014, a unanimous case. But reiterating the importance of the requirements set out in Garcetti, and the quote that I'll read to the court from Lane is, the Garcetti court made explicit that its holding did not turn on the fact that the memo and issue concern the subject matter of the prosecutor's employment because the First Amendment protects some expressions related to the speaker's job. The critical question under Garcetti is whether the speech and issue is itself ordinarily within the scope of the employee's duty, not whether it merely concerns those duties. So what's getting conflated here, part of the problem is, they're conflating the subject matter of the speech versus the actual act of speaking. Is the act of speaking within Officer Noon and Officer Skidmore's job duties? The answer is no. And I think that that's clear. And if we look at Garcetti's quote that I just read to you a minute ago about the role of formal job descriptions and oaths, and we look at the Fifth Circuit case, and some of the cases cited in that decision in 2019 to say, an oath, and I don't have that quote in front of me, but the court in that case was saying, a broad oath, and they had the oath in that case. It was an oath about judicial conduct and what needs to happen when they, and so on and so forth, are ethical obligations. They had the oath in that case, and that still wasn't enough to say, as a matter, to say that the speech at issue there, the reporting of the judicial misconduct, was pursuant to the job duties at issue. It needs to be something that, in this case, that's part of their regular job obligations. Here, the speech at issue, they're blowing the whistle on serious misconduct, corruption, patronage, dangerous officers on the streets. Counsel, let's suppose that part of the complaint that is protected speech would be their complaint that there's an officer on the force who is mentally unstable and has made threatening statements on the Internet, and let's suppose that that is made as a private person on a matter of public concern and it's protected speech. Is it clearly established that they cannot be fired for raising that issue of public safety? I'm sorry, Judge, I think I might have missed the first part of your question. Are you saying that the speakers are raising issues about another police officer's statement? It's my understanding that that's one part of the complaint here. Yes. Is that there was an officer who might pose a danger to the public. Right. And they've brought this to their superior's attention, and then they're fired for doing it. Is it clearly established that they cannot be terminated for making that, engaging in that speech? I don't know the exact answer to that question because it turns on the superiors and whether it's public or not, I think. But my answer is I think it is protected speech under the notions that I'm. But my hypothetical is supposing that it is protected speech. Right. Is it clearly established? So has everybody reached the second part? Yes. Yes, it is. And I think if we go to that Anderson case, you can see some authority for that position, for that making it clearly established that an officer publicly blowing the whistle on conduct like that, if it's outside that officer's job duties, if it's not like the public relations officer or something along those lines, then it is outside of his job duties, and it is protected First Amendment speech clearly established under the law. That's our position in this case. And I'll turn quickly to the Pickering analysis. The district court here followed the Sexton case from this circuit. You might not have cited it, but the model that's established there, which is that there is a sliding scale of these things, the six factors. If the public or if the reporting, the speech is dealing with serious misconduct, like we have in this case, then the balance can tip. The district court can find that even in law enforcement situations where those first two factors do favor them, that the Pickering balance favors the reporting officers in that case. And that Sexton case also tells us that while a lot of times it will be the rare case in which once we have to do the Pickering analysis that we have a clearly established issue. In Sexton, that wasn't the case. And there's a lot of cases cited there, and you can find them in our footnote six of our brief about situations in which the Pickering balance had to be undertaken, and yet the court found that the right of issue was clearly established. I'll point the court to that. Yeah, I will close. I mean, if there's no further questions here, back to the jurisdictional question, because I think it's important. I understand that there, what you'll see in the case law that we've cited, I think, that when there's a factual issue that underlies even the clearly established analysis, the jurisdictional piece of things defeats the appeal because there's a lack of jurisdiction. And even in the Pickering factors, we have factual issues. We have, the defendants argue that the time, place, and manner factor, for example, was it just internal or was it public? Well, it was sent to the Board of Aldermen. That's the legislative body for the city. What's more public than that? So that's a dispute effect. The context of it, there's a lot of discussion in the defendant's brief about whether the motives of the plaintiffs were pure, whether they had a personal vendetta against Chief Kearns. All of that is factual disputes that all have to be sorted out by the jury. Whether it's a matter of public concern, they try to minimize some of the misconduct that's being alleged here. Again, factual questions. And there's no evidence. Let me ask you a fact question. Sure, Judge. Is there anything in the record that tells us whether the plaintiffs were aware at the time the complaint packet was sent out that it was going to the Board of Aldermen and the mayor? I took that as an assumption based on the defendant's statements that the defendants worked with other folks and created that complaint packet and that they had sent that to the Board of Aldermen. Did the plaintiffs actually send that? Well, they participated in building it and it was sent off. I don't know the answer to that question. I guess I should say, Judge. And the last fickering fact, there's no evidence in the record that this speech disrupted these plaintiffs' ability to do their jobs. And those are all a host of fact questions at issue. Was the speech pursuant to a public duty or was it not? And all the factual questions that go to the fickering factors. All that means that the court doesn't have jurisdiction over this case. It's not a collateral order. And so for that reason, we ask the court to dismiss the case and barring that, to affirm the district court's decision denying summary judgment on qualified immunity basis. The court, too many factual questions here for the jury to sort out and allow for the court to make the legal determination later on down the road. Thank you. Thank you, Mr. Panucci. As to the jurisdictional issue, I think, Judge Grinder, you pointed out the real crux of it. Even if you take everything that they allege to be true and that some or all of their speech was made as public or private citizens, that admission that they were required to do it, they were obligated to do it by their oath, would not put any reasonable official on notice that it was anything but duty-bound speech. And with Bond having been decided 10 years earlier than this alleged deprivation, there is simply no way that an admission, which this court has said is fatal to a First Amendment claim, can still entitle you to First Amendment protection. There are no disputed issues of fact that those words were contained within that complaint packet. And there's no disputed fact that they agreed with that statement when I took their depositions. There is no jurisdictional issue as it relates to a disputed factual issue. As it relates to this Fifth Circuit case, obviously I've not had a chance to review that, but it's not our burden to prove clearly established law. That falls on Skidmore and Noon. And they can do that in one of two ways. They can show an analogous case that's controlling, meaning Eighth Circuit or the Supreme Court, under similar facts where a person said, I had to do this because my oath of office required it and was still determined to have had First Amendment protection, which they've not done. Or they can show a robust consensus of cases that puts that same issue beyond debate. And they've done neither. The Sexton case was referenced, and I would point out Sexton was pre-Garcetti. And that footnote in their brief, I think he said it was footnote six, going through a list of cases, also all pre-Garcetti. Since then, we've had Nord in 2014. We've had Morgan on Bonk in, I believe, 2020 or 2019, that have clearly stated, as this relates to Pickering, that public law enforcement agencies have a heightened interest in maintaining loyalty, fostering obedience, and running an efficient operation. And with that, in light of how they submitted their speech, our interests grossly outweigh theirs. And to your question, Judge Grunder, about who they submitted to or did they know who they were submitting it to, that's a question I tried to get to the bottom of. And essentially, the answer I got is neither Noon nor Skidmore actually submitted it. They participated in it. Noon believed it was going to the mayor, and I think he thought it was going to the Board of Aldermen. But none of them intended it to go anywhere beyond that. And neither of them submitted it themselves. But we don't know how it got submitted. I do, but it's not in the record. Cutler submitted it. As far as Garcetti and Lane, those cases are from 2006, or Garcetti is. Since then, this Court has had an opportunity to address the First Amendment. And in Lyons, in Mogard, in Morgan, in Nord, all of those cases point in favor of guaranteeing qualified immunity to my client. So even if you somehow determine the bond wasn't controlling and the admission was not fatal, when you apply Pickering, my clients are still entitled to qualified immunity. Thank you. Thank you, Counsel, for participating in argument before the Court today. We'll continue to study your briefing and render a decision.